CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 21, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LANTZ DOMOENCHI DAY,<br>Plaintiff, | ) | Civil Action No. 7:25-cv-00355 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| WARDEN D. ANDERSON, *et al.*,<br>Defendants. | ) | Chief United States District Judge |

**MEMORANDUM OPINION**

Lantz Domoenchi Day, a Virginia inmate acting *pro se*, brought this action pursuant to 42 U.S.C. § 1983. Day alleges various claims, including deliberate indifference to serious medical needs and retaliation for using the prison grievance process, arising from his incarceration at Red Onion State Prison. (Am. Compl., Dkt. No. 7; *see also* Dkt. No. 7-1, Attachments.) Day has sued several individuals, including the following defendants who have filed motions to dismiss: Anderson, Turner, Meyer, Hall, Duncan, Franklin, Reynolds, Day, Sgt. Mullins, Cobb, Adams, Stapleton, Still, and Herrick (Dkt. No. 35); D. Trent, Cr. Meade, and NP Holbrook (Dkt. No. 40); and Rebecca Bevins (Dkt. No. 48). Day filed a response to these motions. (Dkt. No. 63.)[1]

For the reasons stated below, the above-stated motions to dismiss will be granted.

I. BACKGROUND[2]

Day alleges that he had hip surgery in 2024. Following the surgery, on March 14, 2024, he was moved from medical housing without a special bed order. Instead, he was assigned to a

[1] Rosenbalm is the only defendant who has not filed an appearance. The remaining two defendants, Bray and Ja Mullins, filed an answer. (Dkt. No. 37.) Day has moved for default judgment against Rosenbalm. (Dkt. No. 64.) The court will address this motion in a separate order.

[2] The following background is taken from the amended complaint, which is accepted as true for purposes of this opinion. The amended complaint also includes several pages of attachments (Dkt. No. 7-1), which the court has considered as part of the allegations in the amended complaint. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

top bunk. Day refused to move because "he was not ready to leave medical vulnerable due to recent hip surgery." (Am. Compl. ¶ 16.) Day was given a Disobeying Direct Order Charge and placed in the Restrictive Housing Unit. (*Id.* ¶ 17.)

On March 15, 2024, Day filed a grievance against Nurse Practitioner Holbrook for releasing him without a special lower-bunk, bottom tier pass. (*Id.* ¶ 18.) On March 19, Day was taken to a hospital for his first post-operation consultation. Day was then placed in a cell that was bottom-tier and in the bottom bunk. (*Id.* ¶¶ 19–20.) Plaintiff was questioned by Unit Manager Day and Sgt. Rosenbalm about his bed assignment. (*Id.* ¶ 21.) On March 22, Nurse Holbrook signed a Special Bed Assignment Order for plaintiff to only be housed on bottom-tier/bottom bunk for one year. (*Id.* ¶ 22.)

Day complained on April 4, 2024, to Dr. Rebecca,[3] a physical therapist, about leg-length discrepancy and a surge of pain in the surgical left hip. (*Id.* ¶ 23.) Day developed an infection around the incision area of the left hip. He was placed on antibiotics. (*Id.* ¶ 24.) At physical therapy on April 11, Day told Dr. Rebecca that his pain continued and he was "feeling unsafe with the resurgence of violence" at Red Onion. (*Id.* ¶ 25.)

The Institution Classification Authority (ICA) informed Day on April 18, 2024, that he would be moving to general population on April 19. Plaintiff was assured that he would be placed in a safe and non-vulnerable unit. (*Id.* ¶¶ 29–30.) Day was told to pack his belongings and that he would be going to A6-614 which was bottom tier, but he would have a top bunk. Day refused to move because that unit is "one of the most violent (It was a 10-man fight days prior)" and he had a special bed assignment pass for bottom bunk. (*Id.* ¶ 31.) Sgt. Rosenbalm went to plaintiff's cell with Officer Harvin and an unknown officer to remove all "consumables"

---

[3] This defendant has been identified as Dr. Rebecca Bevins. (Dkt. No. 48.)

due to Day refusing to go to a general population cell. (*Id.* ¶ 32.) Rosenbalm threw several of Day's electrical devices on the floor. She threw food items out of the cell, which burst as they landed. Plaintiff's headphones were cracked. (*Id.* ¶ 33.) Day was served with a charge for refusing general population and a false threatening an officer charge. (*Id.* ¶ 34.)

On April 22, 2024, the ICA Team told Day that if he wanted to leave the Restorative Housing Unit (RHU), then A6-614 was available. Plaintiff moved to the cell instead of having his cell ransacked again. (*Id.* ¶¶ 35–36.)

At midnight on April 25–26, 2024, a toilet flooded and feces mixed with water entered plaintiff's cell. Officers McCray and Lawson allowed Day and his cellmate to mop the floor. However, Day was not allowed to shower and was ordered back to the cell before the floor dried by Sgt. Bland. (*Id.* ¶¶ 37–38.) Day slipped when getting in his top bunk. He landed on his left leg and jammed his lower back and injured hip. Plaintiff's cellmate helped him into his bunk and out the next morning. (*Id.* ¶¶ 39–40.)

Day asked for an Emergency Grievance Form and asked to see Nurse Holbrook but was told she was not available. Plaintiff "hobbled" to the recreation area, where Sgt. Cobb refused to give plaintiff a grievance form. (*Id.* ¶¶ 41–42.) Several officers escorted Day to a wheelchair and took him to RHU. Sgt. Cobb filed a charge against Day. (*Id.* ¶ 43.)

On April 29, 2024, Day filed a complaint against ICA Team members A. Duncan and Unit Manager Day for assigning him to a top bunk with knowledge of the Special Bed Assignment Order. Day requested a sick call for assistance with a walking device and pain medication. Grievance Coordinator T. Still found that the complaint against the ICA Team was non-grievable because Day did not describe how he was personally affected. Day alleges that he

detailed his injury in the grievance. (*Id.* ¶¶ 44–46.) Day appealed to the Regional Ombudsman, but the decision was upheld. (*Id.* ¶ 47.)

Day was examined by Nurse Holbrook on May 22, 2024. She prescribed physical therapy and prescribed a pain reliever (Tylenol). Nurse Holbrook told Day he would also receive a muscle relaxant, but Day never received this medication. (*Id.* ¶ 48.)

On May 28, 2024, medical officers along with Ja Mullins[4] and Combs came to Day's cell to escort him to physical therapy. Officers strip searched Day and gave him back his clothing. When Day was dressed, Combs told Day he was not allowed to wear his wave cap. Day obliged but told the officers there was a recent memo by the Chief of Corrections allowing inmates to wear the caps anywhere in the facility. Plaintiff removed his hands just in time before the slot was slammed shut. The officers refused to take plaintiff to physical therapy. (*Id.* ¶ 49.) Ja Mullins told Dr. Rebecca that Day refused therapy on May 31, but Mullins never went to Day's cell for physical therapy. (*Id.* ¶ 50.)

Day filed a complaint/grievance against Ja Mullins and Combs for interfering with his health care on June 2, 2024. Day grieved Trent and other medical staff for "obvious retaliation." (*Id.* ¶ 51.)

Before Day left a physical therapy session on June 27, 2024, Ja Mullins told Officer Bray to put Day in a holding cell in– the back of the medical department. Bray told plaintiff that Bristol Orthotic would be arriving in five minutes. Day was in the cell for two and a half hours. Mullins claimed that the orthotic people never came. Day learned that the orthotic rep did come that day, so Day filed a complaint/grievance against Ja Mullins and Bray. Franklin responded

[4] The court gathers that Ja Mullins is an officer and a separate defendant from Sgt. Mullins.

that the rep came but had to leave suddenly. Day was not rescheduled until late December 2024. (*Id.* ¶¶ 55–59.)

Throughout the summer of 2024, whenever Day was called for a medical appointment, Ja Mullins and Bray threatened Day and called him a "bitch" for filing grievances against them. Despite several complaints, no superior authority intervened. Bray and Ja Mullins were still allowed to escort plaintiff for appointments. On October 8, 2024, Sgt. Mullins asked plaintiff if he was going to withdraw a grievance he filed against Bray and Ja Mullins for causing him to miss his orthotic appointment. Day refused to withdraw, although he notes that it had been decided months prior and closed. (*Id.* ¶¶ 60–61.)

Bray and Ja Mullins escorted Day to an orthotics appointment on October 17, 2024. They "accosted" Day for taking too long to be placed in full restraints. Bray got "close in plaintiff's face" and threatened Day. In the vestibule, out of view of other inmates, Bray and Ja Mullins refused to allow plaintiff to use a wheelchair. Instead, they forced him to walk in full restraints. (*Id.* ¶¶ 63–66.) The officers threatened to harm plaintiff when they got into medical. They called him a "big pussy" and a "paper pusher" for the lawsuit and numerous grievances. (*Id.* ¶ 67.)

Day refused the officers' provocations. Officer Ja Mullins stated, "Did he just threaten you" to Bray, who agreed, "yeah, he did." This was an "obvious false narrative to refused plaintiff's appointment and/or create a way to cause him harm because they turned around and became very aggressive by pushing and squeezing into his skin until they pushed him into building's brick wall. Ofr. Bray mashed plaintiff's face against bricks." (*Id.* ¶ 68.)

When officer brought plaintiff to his cell, Bray grabbed Day behind his neck and squeezed causing serious pain to his degenerating C-3 and C-5. Bray got close to Day's face and said, "a white man did this to you." Plaintiff went into his cell without incident. (*Id.* ¶¶ 69–70.)

An hour later, Sgt. Mullins returned to Day's cell and told him that he was going to RHU. Day was restrained in handcuffs and shackles and taken there without incident. Nurses Jenkins and Cantrell checked Day before placing him in the cell. Day told the nurses about his neck injury being aggravated by Bray grabbing and squeezing his neck. (*Id.* ¶¶ 71–72.)

Day filed a criminal complaint pursuant to procedures described in the ROSP handbook. Day has not received any response to this complaint. (*Id.* ¶ 73.) Bray filed a false threatening charge against Day. (*Id.* ¶ 74.) Day remained in RHU for three weeks and denied another appointment with orthotic. (*Id.* ¶ 75.)

Day has dealt with retaliation from defendants. Day had a "decent rapport" until he filed a lawsuit in April 2024. Day has dealt with "too many medication mix-ups in his medicinal. Medications are either not in his cup or too many given." Trent and Meade have done nothing to address the issue. (*Id.* ¶¶ 76–77.)

On April 19, 2024, Sgt. Rosenbalm was the "reporting officer" of a false threatening charge against Day. The hearing did not happen until June 10, 2024. Hearing officer Adams filed multiple postponements. Adams denied plaintiff body worn camara and MaxPro video footage of Rosenbalm destroying Day's personal property. (*Id.* ¶¶ 79–82.)

Adams assigned Sgt. Lewis to be Day's advisor during the hearing. Sgt. Lewis had a pending charge against Day for refusing to leave medical after surgery. Warden Anderson upheld plaintiff's appeal of that threatening charge. (*Id.* ¶¶ 83–84.)

On October 17, 2024, Bray filed a false threatening charge against Day. Ja Mullins was Bray's witness who "perpetuated the false narrative." The hearing did not occur until December 3, 2024, more than thirty days after the original hearing date. Adams refused to give Day video footage that would have discredited Bray and his witness. Warden Anderson upheld Day's appeal in favor of Bray and Adam's decision finding plaintiff guilty. Adams assigned Officer Ramey to represent Day at the hearing. Ramey refused to speak because he was not appointed until a few minutes before the hearing. (*Id.* ¶¶ 85–89.)

Bray, Ja Mullins, Combs, and other "medical officers" were involved in denying physical therapy ordered for Day by Dr. Fox and Nurse Holbrook to treat his lower back and left hip. Day reached out to superior officers to multiple grievances, but no one did anything to protect Day from excessive force, false charges, and confinement in RHU. (*Id.* ¶¶ 90–91.)

Day claims that Duncan, Day, Reynolds, Hall, Warden Anderson, and the Assistant Warden are in charge of inmate housing and were "in charge during the events of this complaint." These defendants failed to protect Day from "harms way" by assigning him to a top-bunk two months after surgery, resulting in injury." (*Id.* ¶ 92.)

Hall, Franklin, Anderson, and Turner failed to intervene when Bray and Ja Mullins prevented Day from receiving physical therapy and orthotic appointments. The animosity of Bray and Ja Mullins "culminated into assault and battery and a false charge and confinement." (*Id.* ¶ 93.)

Trent and Meade failed to stop the constant unprofessionalism by medical staff who retaliated against Day after a civil suit filed by plaintiff against the medical provider and mental department that included several defendants. (*Id.* ¶ 94.)

Adams violated due process by denying video footage to present as evidence and finding Day's witnesses to be "irrelevant." (*Id.* ¶ 95.)

Rosenbalm, Cobb, and Sgt. Mullins were supervisors that worked in the building that overlooked and failed to intervene to stop violations occurring under their supervision. (*Id.* ¶ 96.)

Finally, Day concludes by stating that ROSP is "operated with an ironclad culture of retaliation" and there is a "well-known family dynamic that is quite clannish." (*Id.* ¶ 102.) He seeks damages and injunctive relief, such as an order that Warden Anderson "replace items that Sgt. Rosenbalm destroyed." (*Id.* ¶ 97.)

## II. ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The court need neither accept a complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Pleadings by pro se litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. *See* 42 U.S.C. § 1983; *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171 (2023). Furthermore, to establish liability under § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of his rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018).

**B. Motion to Dismiss by Anderson, Turner, Meyer, Hall, Duncan, Franklin, Reynolds, Day, Sgt. Mullins, Cobb, Adams, Stapleton, Still, and Herrick**

Defendants Anderson, Turner, Meyer, Hall, Duncan, Franklin, Reynolds, Day, Sgt. Mullins, Cobb, Adams, Stapleton, Still, and Herrick filed a motion to dismiss. Of these defendants, Day has not made any allegations against Herrick. This defendant will be dismissed due to lack of personal involvement. Three other defendants—Still, Meyer, and Stapleton—are referenced only for their involvement in the grievance process. (Am. Compl. ¶ 13.) This is also insufficient to establish personal involvement under § 1983. Moreover, inmates do not have any constitutional rights in the prisoner grievance process. *See Fleming v. Pozeg*, Case No. 7:25CV00900, 2026 WL 1499051, at *2 (W.D. Va. May 28, 2026) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). Accordingly, these four defendants will be dismissed.

Day's claims against the remaining defendants in this group are as follows: (1) defendants Duncan, Day, Reynolds, Hall, Anderson, and Turner failed to protect Day by

assigning him to a top bunk (Am. Compl. ¶ 92); (2) defendants Hall, Franklin, Anderson, and Turner violated Day's constitutional rights by not responding to a grievance (Am. Compl. ¶ 93); (3) defendant Adams violated Day's due process rights by refusing to present certain evidence at a disciplinary hearing (Am. Compl. ¶ 95); and (4) defendants Cobb and Sgt. Mullins violated Day's rights as supervisors because they oversee the building where the violations took place (Am. Compl. ¶ 96).

The first claim can also be dismissed due to lack of personal involvement. Day does not plausibly allege that Duncan, Day, Reynolds, Hall, Anderson, or Turner were involved with Day's assignment to a top bunk. Day simply alleges that these defendants were "in charge during events in this complaint" and "failed to protect plaintiff from harms way by assigning him to a top-bunk two months after surgery that resulted in an injury." (Am. Compl. ¶ 92.) The perfunctory allegation that they "assigned" Day to a top bunk is insufficient to state the personal involvement of these defendants. Day argues that these defendants are "responsible for recommending and approving Plaintiff's re-location from RHU to the top bunk in spite of his physical vulnerability and medical order to not be housed on the top-tier or top bunk." (Dkt. No. 63 at 4.) In support, plaintiff cites to VDOC operating procedures that apply to housing assignments, but Day has not outlined any actions taken by these defendants pursuant to those policies.

To the extent that Day seeks to state a supervisory liability claim, it also falls short. A plausible supervisory liability claim requires a showing that (1) the supervisor had actual or constructive knowledge that his subordinates engaged in conduct posing a pervasive and unreasonable risk of constitutional injury; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive

practices; and (3) an affirmative causal link between the inaction of the supervisor and the particular constitutional injury suffered by the plaintiff. *Green v. Back*, 539 F. App'x 78, 80 (4th Cir. 2013). Day's allegation that these defendants were "in charge" falls short of a plausible claim.

The second claim, alleging failure to respond to grievances, can be dismissed because, as stated above, inmates do not have any constitutional rights in the prisoner grievance process.

In the third claim, Day alleges that Adams violated due process by not allowing Day to present evidence at his hearings. To succeed on a procedural due process claim, a plaintiff must satisfy three elements: (1) that he had a constitutionally cognizable life, liberty, or property interest, (2) that the deprivation of that interest was caused by some form of state action, and (3) that the procedures employed were constitutionally inadequate. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). While Day alleges that he was convicted at his disciplinary hearings, a disciplinary conviction alone is not sufficient to invoke the due process clause. A prison disciplinary action does not implicate a liberty interest requiring due process unless it inflicts "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "inevitably affect[s] the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Day has failed to allege the impact of the discipline he received, such that the court could plausibly conclude that he was deprived of a liberty interest requiring due process.

Finally, in Day's last claim against these defendants, he alleges that Cobb and Sgt. Mullins should be liable simply because they were supervisors where Day was harmed by unconstitutional conduct. This again fails to satisfy the standards for supervisory liability, discussed above.

For these reasons, the court will grant the motion to dismiss filed by Anderson, Turner, Meyer, Hall, Duncan, Franklin, Reynolds, Day, Sgt. Mullins, Cobb, Adams, Stapleton, Still, and Herrick.

**C. Motion to Dismiss by D. Trent, Cr. Meade, and NP Holbrook**

Defendants D. Trent, Cr. Meade, and NP Holbrook can be referenced collectively as Medical Defendants. The court construes Day's amended complaint as alleging claims against them for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Day also appears to bring claims for unlawful retaliation against Trent and Meade.

The Eighth Amendment's prohibition against cruel and unusual punishment protects against the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state an Eighth Amendment deliberate indifference claim, a prisoner must show both "an objective component and a subjective component." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). The objective component is satisfied by a "serious medical condition," meaning one that "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* "The subjective component is satisfied by proof of a defendant's deliberate indifference," which is shown where a defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks but nevertheless disregarded them." *Id.*

Day alleges that Holbrook discharged him at first without a bottom bunk order, but when Day filed a complaint about this, Holbrook issued the bottom bunk, bottom tier order. (Am. Compl. ¶¶ 15, 18, 22.) This cannot be deliberate indifference because Holbrook acted appropriately in response to a serious medical need. While Day was later placed in an upper

bunk after a flood in his cell, Day fails to connect this action to Holbrook. Day further complains that Holbrook told Day he would receive a muscle relaxant, but he never received this medication. In the same encounter, however, Day was prescribed physical therapy and a pain reliever, showing the Holbrook was not disregarding Day's medical issues. (Am. Compl. ¶ 48.) Day also alleges that he complained about missing his Benadryl for two days in December of 2024. (Dkt. No. 7-1 at 81.) Trent responded and told Day that "[i]f you are missing a medication in your cup, please notify the nurse administering you medication so they can obtain it. It has to be brought up at the time of administration of your medication." (*Id.*) As Trent did not ignore and attempted to address Day's medical issue, Trent was not deliberately indifferent to Day's serious medical needs. To the extent that Day alleges that Trent and Meade did nothing to address "mix-ups" in his medication, Day fails to allege how Trent or Meade were personally involved in any mix-up or were even informed of such issues.

Plaintiff also alleges that Trent and Meade "failed to stop the constant unprofessionalism by medical staff who expressed their retaliation against plaintiff after the civil suit plaintiff filed against the institutions medical provider and mental department that included several defendants." (Am. Compl. ¶ 94.) Here, Day does not allege retaliation by Trent and Meade but appears to argue that they should have "stopped" retaliation by others from happening in their role as supervisors of certain medical staff. This claim fails to state the elements of supervisory liability discussed elsewhere in this opinion. Finally, Day also alleges that he grieved Trent and other medical staff for "obvious retaliation" (*Id.* ¶ 51.), but without any details regarding such retaliation, he fails to state a plausible claim.

For these reasons, the court will dismiss the claims brought by Day against D. Trent, Cr. Meade, and NP Holbrook.

**D. Motion to Dismiss by Rebecca Bevins**

The amended complaint contains the following allegations against defendant Bevins:

- "Plaintiff would like to add defendants T. Still (G.C.), the Grievance Coordinator at R.O.S.P., Rebecca (physical therapist), is in charge of P.T., Holbrook (NP, Nurse Practitioner) is R.O.S.P.'s medical provider Thomas Meyer (RA) and K. Stapleton, Discipline Unit Manager, have the final say in inmates appeals. Obvious due process violations were overlooked and disregarded by them . . . ." (Am. Compl. ¶ 13.)

- "Plaintiff complained to Dr. Rebecca, PT (Physical Therapist) about leg-length discrepancy and surge of pain in the surgical left hip. He wanted to know when he will be sized for special shoes." (Am. Compl. ¶ 23.)

- "On 4/11/24, while at physical therapy plaintiff told Rebecca (PT) that he was continuing to deal with left hip pain and was feeling unsafe with the resurgence of violence." (Am. Compl. ¶ 26.)

- "On 5/31/24 Officer Ja. Mullins told Dr. Rebecca (PT) I refused therapy again. Ja. Mullins never went to Plaintiff's cell for physical therapy." (Am. Compl. ¶ 50.)

These allegations are insufficient to state any sort of claim against Bevins, for many of the reasons already articulated with respect to the claims brought against other defendants. For instance, when Day alleges that he saw Bevins and made complaints to her, he does not follow-up by stating what the response was from Bevins with respect to the care requested. This type of allegation does not amount to a plausible allegation that Bevins knowingly disregarded any of Day's serious medical needs. And his allegation that Bevins and others "overlooked and disregarded" due process violations cannot meet the elements of a supervisory liability claim.

The court will dismiss the claims against Bevins.

## III. CONCLUSION

The court will issue an appropriate order granting the motions to dismiss addressed in this opinion.

Entered: September 21, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge